IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | MDL Docket No. 2004 |
| | | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * | |
| | | Case Nos. |
| LIABILITY LITIGATION | * | 4:12-cv-176 (Taylor) |
| | | 4:13-cv-42 (Sanborn) |
| | * | 4:14-cv-117 (Mack) |

O R D E R

Presently pending before the Court are the motions in limine for the upcoming trials of Teresa Taylor (4:12-cv-176), Karen Sanborn (4:13-cv-42), and Stephanie Mack (4:14-cv-117). This Order sets forth the Court's rulings on those motions.

**I.  Mentor's Motion in Limine re Dr. Michel Cosson (ECF No. 62 in 4:12-cv-176, ECF No. 63 in 4:13-cv-42, ECF No. 46 in 4:14-cv-117)**

Mentor seeks to preclude Plaintiffs from offering deposition testimony of Dr. Michel Cosson at trial. Plaintiffs represent that Dr. Cosson will appear live at trial and that they do not intend to attempt to read his deposition testimony as if he were appearing as a witness. The Court thus finds that Mentor's motion is moot.

**II.  Mentor's Motion in Limine "# 1" re Dr. Lentnek (ECF No. 63 in 4:12-cv-176, ECF No. 64 in 4:13-cv-42, ECF No. 48 in 4:14-cv-117)**

Mentor again seeks to exclude the testimony of Plaintiffs' expert Dr. Arnold Lentnek. The Court previously conducted a

*Daubert* hearing and concluded that Dr. Lentnek's methodology was sufficiently reliable.  The Court again declines to exclude Dr. Lentnek based on his methodology.

The remaining question is whether there is sufficient "fit"—a valid scientific connection to Plaintiffs' cases.  Dr. Lentnek's testimony relates to erosions and late onset infections of ObTape as compared to other sling products.  It is not clear from the present record whether Taylor, Sanborn, and Mack are seeking to recover for the types of complications that Dr. Lentnek evaluated.  The Court thus **DEFERS** ruling on Mentor's motion to exclude Dr. Lentnek.  If Plaintiffs can establish "fit," then Dr. Lentnek will be permitted to testify.  If Plaintiffs cannot establish "fit," he will not.

## III. Mentor's Motion in Limine "# 2" re Dr. El-Ghannam (ECF No. 64 in 4:12-cv-176, ECF No. 65 in 4:13-cv-42, ECF No. 49 in 4:14-cv-117)

Mentor seeks to exclude certain testimony of Plaintiffs' expert Dr. Ahmed El-Ghannam.  The Court previously ruled: "To introduce [Dr. El-Ghannam's] testimony regarding ObTape degradation and/or the release of toxins, the witness must establish a causal connection between that degradation and/or release of toxins and Plaintiff's infection and extrusion/erosion."  Text Order, June 4, 2013, *Morey v. Mentor*, 4:11-cv-5065.  The Court will follow the same ruling here and thus **DEFERS** ruling on Mentor's motion to exclude Dr. El-Ghannam.

2

If Plaintiffs produce a specific causation expert to tie Dr. El-Ghannam's general causation testimony to their specific cases, then his testimony will be admitted.  If Plaintiffs cannot link Dr. El-Ghannam's testimony to their individual cases, then his testimony will not be admitted.

**IV.  Mentor's Motion in Limine "# 3" re Similar Incidents (ECF No. 65 in 4:12-cv-176, ECF No. 66 in 4:13-cv-42, ECF No. 50 in 4:14-cv-117).**

Mentor seeks to exclude evidence of other events and incidents of complications with ObTape that are not "substantially similar" to Plaintiffs' injuries.  As the Court ordered at the pretrial conference, each Plaintiff must file a brief on substantially similar incidents explaining what injuries the Plaintiff has and why the other incidents they seek to introduce are substantially similar to the Plaintiff's injuries.  That brief is due December 4, 2015.  Mentor shall respond by December 18, 2015.

**V.  Mentor's Motion in Limine "# 4" re Post-Implant Conduct (ECF No. 66 in 4:12-cv-176, ECF No. 67 in 4:13-cv-49, ECF No. 51 in 4:14-cv-117).**

Mentor seeks to exclude evidence of its conduct, admissions, and awareness regarding ObTape after Plaintiffs' implant dates.  Mentor contends that this evidence is irrelevant to all of Plaintiffs' claims because the focus of this action is on Mentor's conduct in designing, manufacturing, and providing warnings about ObTape—and the key inquiry is whether ObTape was

defective as of the date it was sold to Plaintiffs' implanting physicians.  The Court disagrees.  The Court previously noted that substantially similar post-implant incidents may be admissible to show causation.[1]  Order, June 3, 2013 at 10 n.2, *Morey v. Mentor Corp.*, ECF No. 168 in 4:11-cv-5065.  The Court also noted that post-implant conduct that relates to pre-implant issues is admissible.  And, Plaintiffs assert that Mentor did not adequately test ObTape before marketing it and that further testing would have revealed that ObTape was not safe for its intended use; post-implant evidence of Mentor's conduct, admissions, and awareness is thus relevant on whether Mentor should, with reasonable care, have known about problems with ObTape that were later revealed.

Also, post-implant evidence of Mentor's conduct, admissions, and awareness is relevant on Plaintiffs' punitive damages claims.[2]  Taylor's claims are governed by Florida law.

---

[1] The Court has also ruled that such evidence is relevant on continuing duty to warn claims.  Sanborn may not assert such a claim under Texas law, and it is not clear whether Taylor and Mack have viable continuing duty to warn claims.  *See infra* § VII(j).

[2] The Court previously concluded that admission of Mentor's post-injury conduct related to ObTape does not offend Due Process because "evidence of Defendant's post-injury conduct *with regard to ObTape* is not dissimilar to or independent from the acts on which Plaintiff's claims are based.  Plaintiff contends that Defendant knew about significant hazards associated with ObTape but sold the product anyway, failed to warn physicians of the hazards of ObTape, and continued to conceal the hazards of ObTape.  Plaintiff contends that Defendant continued the same concealment conduct after her surgeries—conduct which is not dissimilar to or independent from

Under Florida law, punitive damages may be awarded when the defendant acts with negligence "of a 'gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.'" *L.E. Myers Co. v. Young*, 165 So. 3d 1, 7 (Fla. Dist. Ct. App. 2015) (quoting *Am. Cyanamid Co. v. Roy*, 498 So. 2d 859, 861-62 (Fla. 1986). "Evidence of repetition and concealment of offensive conduct after it initially occurred is indicative of malice or evil intent sufficient to support punitive damages." *Johns-Manville Sales Corp. v. Janssens*, 463 So. 2d 242, 256 (Fla. Dist. Ct. App. 1984).

Sanborn's claims are governed by Texas law. Under Texas law, the following factors are considered in determining whether exemplary damages should be awarded: "(1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and

---

the acts on which Plaintiff's claims are based." *Morey v. Mentor Corp.*, Order of June 12, 2013 at 3-4, ECF No. 180 in 4:11-cv-5065.

sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety." *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). "Post-[implant] conduct is relevant to the jury's consideration of the *Kraus* factors." *Matbon, Inc. v. Gries*, 288 S.W.3d 471, 487 (Tex. App. 2009).

Mack's claims are governed by Idaho law. Under Idaho law, to recover punitive damages Mack must prove "oppressive, fraudulent, malicious or outrageous conduct by" Mentor. Idaho Code § 6-1604. In awarding punitive damages, the "degree of reprehensibility of the defendant's misconduct" is a key consideration. *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 233 P.3d 1221, 1260 (Idaho 2010) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)). In determining the degree of reprehensibility, the courts consider whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* (quoting *Campbell*, 538 U.S. at 419).

Thus, under the law of Florida, Texas, and Idaho, post-implant conduct that shows pre-implant intent or shows the

degree to which Mentor concealed a hazard is relevant on Plaintiffs' punitive damages claims.  For all of these reasons, Mentor's motion in limine # 4 is **DENIED**.

## VI. Mentor's Motion in Limine "# 5" re Lay Testimony regarding Medical Complications (ECF No. 67 in 4:12-cv-176).

Mentor anticipates that Plaintiff Teresa Taylor will attempt to testify that ObTape disintegrated in her body, that parts of the ObTape adhered to tissue in her lower stomach, and that ObTape put her at risk for cancer in the future.  To the extent Mentor seeks to preclude Taylor from offering an expert opinion on what injuries ObTape caused her, the motion is **GRANTED**.  But Taylor may testify about what she felt and about her recollection of conversations with her treating physicians regarding her prognosis and treatment options.

## VII. Mentor's Motion in Limine re Rulings made in Prior Cases (ECF No. 68 in 4:12-cv-176, ECF No. 68 in 4:13-cv-42, ECF No. 52 in 4:14-cv-117).

Mentor asks the Court to make rulings in this case similar to those it made in the prior trials.

   a. References to other clients of Mentor's counsel. Plaintiffs agree that they will not reference other clients of Mentor's counsel, so this part of the motion is **GRANTED.**

   b. Unrelated business issues of Mentor (breast implants; SABRE sling; relationship between Mentor, Johnson &

Johnson, and Ethicon).  The Court previously granted Mentor's motion to exclude such evidence but noted that it would allow voir dire on prospective jurors' financial interest in J&J and Ethicon without telling the jury those entities were affiliated with Mentor. The Court follows that ruling here, so this part of the motion is **GRANTED**.  Plaintiffs contend that the Court should revisit its ruling with regard to the SABRE sling, another Mentor suburethral sling product. SABRE was not made of polypropylene like ObTape was, and the Court finds that evidence regarding SABRE is not relevant here.

c.   Evidence or argument regarding Mentor's liability insurance.  Plaintiffs agree that they will not reference Mentor's liability insurance, so this part of the motion is **GRANTED.**

d.   Redaction of healthcare provider/patient information from adverse event reports or similar documents.  This part of the motion is **GRANTED**, and Plaintiffs are ordered to redact the names and other identifying information relating to doctors, healthcare providers, and patients in adverse event reports and similar documents.  Plaintiffs shall be permitted to use

unredacted versions only if they show that redaction would eliminate relevant evidence.

e.   Evidence or argument regarding Mentor's withdrawal of ObTape or Mentor's decision to stop selling ObTape. The Court previously ruled that such evidence could not be admitted to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. The Court follows that ruling here, and the evidence may not be used to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. If Plaintiffs lay the proper foundation, such evidence may be admitted for another purpose, such as proving ownership, control, feasibility of precautionary measures (if controverted), or for impeachment.

f.   Evidence regarding Mentor's proposed changes to ObTape's product insert data sheet in 2006. The Court previously granted a motion to exclude such evidence, and the Court follows that ruling here. The evidence is excluded unless Plaintiffs establish that such evidence is admissible to impeach testimony of a witness called by Mentor or if Mentor otherwise opens the door to such testimony.

g.   Photographs depicting non-Plaintiffs.   None of the Plaintiffs has photographs of her injuries—which Mentor asserts are not photographable.   While photographs of non-plaintiffs may be tangentially relevant, photos of non-plaintiffs would likely be confusing and prejudicial.   The Court thus **GRANTS** this part of the motion.

h.   Reference to Mentor's "confidential" designation of documents produced in discovery.   Plaintiffs agree that they will not reference Mentor's "confidential" designations, so this part of the motion is **GRANTED.**

i.   Material Safety Data Sheets regarding materials not used in the manufacture of ObTape.   The Court previously concluded that such evidence was irrelevant to claims regarding ObTape, and Plaintiffs did not offer a compelling reason for the Court to reconsider its prior ruling.   This part of the motion is thus **GRANTED.**

j.   Evidence regarding Foreign Regulatory Action.   The Court previously denied Mentor's motions to exclude evidence of foreign regulatory action in cases with a viable continuing duty to warn claim and in cases where the foreign regulatory action pre-dated the plaintiff's implant surgery.   The Court previously

granted the motion in a case with no viable continuing duty to warn claim.  The Court follows those rulings here.  All three Plaintiffs were implanted with ObTape before the foreign regulatory action took place, so the key question is whether they have a viable continuing duty to warn claim.

**Taylor**.  Florida courts have recognized a continuing duty to warn claim.  *See Johns-Manville Sales Corp. v. Janssens*, 463 So. 2d 242, 256 (Fla. Dist. Ct. App. 1984) (recognizing continuing duty to warn regarding risks of asbestos exposure).  To pursue such a claim, Taylor must establish that a breach of the continuing duty to warn caused some of her injuries.  It is not clear from the present record whether Taylor will be able to present sufficient evidence to create a genuine fact dispute on this issue.  Before Taylor may introduce evidence of foreign regulatory action, she must show the Court that a genuine fact dispute exists on her continuing duty to warn claim.

**Sanborn.**  Texas courts have not recognized a continuing duty to warn claim, and the Fifth Circuit has concluded that Texas law does not recognize such a claim unless the manufacturer voluntarily assumed a duty to warn or regained control of the product after

sale. *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 430 (5th Cir. 2001) ("Texas courts generally do not recognize any post-sale duty to warn of product hazards arising after the sale."); *accord Bryant v. Giacomini, S.p.A.*, 391 F. Supp. 2d 495, 503 (N.D. Tex. 2005) ("Under Texas products liability law, a manufacturer has no duty to warn about a product after it has been manufactured and sold."). Sanborn nonetheless posits that the Texas Supreme Court will likely follow the majority of states that have considered the issue and recognize a post-sale duty to warn even in cases where the manufacturer has not voluntarily assumed a duty to warn or regained control of the product. But the Texas Supreme Court has not done so, and federal courts analyzing Texas law have not found that the Texas Supreme Court would recognize such a claim. Therefore, Sanborn may not pursue a continuing duty to warn claim under Texas law.

**Mack.** Neither Mentor nor Mack pointed the Court to any authority on whether Idaho recognizes a continuing duty to warn claim, and the Court has not located any Idaho case law on this point. The Idaho legislature suggested that such a duty exists because Idaho's statute regarding admissibility of subsequent remedial

measures states: "The provisions of this section shall not relieve the product seller of any duty to warn of known defects discovered after the product was designed and manufactured." Idaho Code § 6-1406. Even if Idaho does recognize a continuing duty to warn claim, Mack must establish that a breach of the continuing duty to warn caused some of her injuries. It is not clear from the present record whether Mack will be able to present sufficient evidence to create a genuine fact dispute on this issue. Before Mack may introduce evidence of foreign regulatory action, she must show the Court that a genuine fact dispute exists on her continuing duty to warn claim.

k. Evidence of Comparative Risks. The Court previously deferred ruling on Mentor's motion to exclude evidence or argument on a purported duty to warn of a comparative risk with other suburethral sling products. The motion is **DEFERRED** here, as well, so that the Court may evaluate the issue in the context of the evidence presented at trial.

**VIII.   Plaintiffs' Motions in Limine re Television Ads (ECF No. 69 in 4:12-cv-176; 53 in 4:13-cv-42; 40 in 4:14-cv-117).**

Plaintiffs seek to exclude evidence of television advertisements regarding ObTape and other mesh products, arguing

13

that such evidence is irrelevant and prejudicial. Taylor, Sanborn, and Mack all assert that they learned of their potential claims when they saw television commercials regarding injuries caused by mesh slings. The Court finds that the evidence is relevant on that issue, so Plaintiffs' motion to exclude it is **DENIED** to the following extent: Mentor shall be permitted to question Plaintiffs on how they discovered their potential claims. The Court remains skeptical that broader references to television ads are relevant; if Mentor seeks to admit the evidence for another purpose, then it must convince the Court that the evidence is relevant for that purpose.

**IX. Plaintiffs' Motion in Limine re 510(k) clearance (ECF No. 70 in 4:12-cv-176, ECF No. 55 in 4:13-cv-42, ECF No. 42 in 4:14-cv-117)**

One of the recurring issues in this multi-district litigation that has perplexed the Court is whether evidence that Mentor's product was approved by the FDA during the 510(k) clearance process should be admitted. The issue has apparently been so perplexing that the Court's resolution of it has been inconsistent. When the Court first addressed the issue, it excluded the evidence. Phase I Georgia Pls. Pretrial Conference Tr. 174:9-175:16, May 3, 2010, ECF No. 299 in 4:08-md-2004. More recently, the Court admitted the evidence but gave a limiting instruction. *See Morey v. Mentor Corp.*, Jury

Instructions Charge No. 11, ECF No. 183 in 4:11-cv-5065.   The
Court now takes another (hopefully the last) bite at the apple.

It is undisputed that prior to selling ObTape, Mentor was
required to obtain approval from the FDA.   Therefore, the law
required advance approval before the product could be marketed
to the public.   Whether Mentor obtained such approval certainly
is relevant to whether Mentor exercised ordinary care in
deciding to make ObTape available to the public.   FDA approval
via the 510(k) clearance process, however, does not mean that
the FDA has determined that the product was safe and effective.
In fact, it is undisputed that such approval does not mean that.
*See, e.g., Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478-79 (1996)
(describing the limited nature of the 510(k) process, which
simply requires that a new device be "substantially equivalent"
to a pre-existing device).   Therefore, reliance upon FDA 510(k)
approval as an indication that a product is likely safe would
not indicate the exercise of ordinary care by Mentor.   Moreover,
evidence of such approval is not probative on the issue of
whether the product was safe or defective.   The evidence is
irrelevant for that purpose because in approving the product for
sale under the 510(k) process the FDA does not evaluate the
product's safety or effectiveness.

Although the evidence has some probative value on the issue
of whether Mentor exercised ordinary care in its decision to

sell its product to the public, the admission of that evidence also carries with it a danger of prejudice to Plaintiffs and an opportunity to confuse and mislead the jury.  The question is whether that prejudice is "unfair" and whether the opportunity to confuse and mislead is likely such that the probative value of the evidence is substantially outweighed by those dangers and should thus be excluded under Federal Rule of Evidence Rule 403. Evidence of FDA 510(k) approval will establish that the federal government has approved the sale of this product to the public. Although the Court can instruct the jury that this does not mean that the FDA has found the product to be safe, that lay jury must make the distinction between government approval without an express finding of safety and government approval with an express finding of safety.  To ask a jury to consider this evidence only on the issue of whether Mentor exercised ordinary care but not on the issue of whether the product was safe is a tall order.  If the evidence is admitted, the jurors will know that the FDA allowed the product to be sold, and they will be told that they can consider this approval in deciding whether Mentor exercised ordinary care.  Moreover, because Mentor's withdrawal of ObTape from the market is arguably a subsequent remedial measure, evidence of the withdrawal of the product would not be admissible.  Consequently, the jury would only know that the product was FDA "approved" but not know that Mentor

made the decision to take that "approved" product off the market. The prejudice to Plaintiffs is unfair, and the opportunity to confuse and mislead is real. If the Court excludes evidence of FDA 510(k) approval, Mentor is not similarly prejudiced. As explained, FDA approval has no bearing on the safety or defectiveness of the product; and with no mention of the FDA process, no inference can be made that the product was found to be unsafe.

This case ought to be decided on the safety of this product (i.e., whether it is defective) and whether Mentor exercised ordinary care in its design, manufacture, and warnings. Whether the FDA approved ObTape (but without regard to its safety) may be tangentially relevant, but that relevance is substantially outweighed by the danger of unfair prejudice and the potential to confuse and mislead the jury. Accordingly, the evidence is excluded under Rule 403. To avoid future motions for reconsideration, the Court points out that even if evidence that Mentor withdrew ObTape from the market were also admitted, that would not sufficiently alter the balance of the Rule 403 analysis—the unfair prejudice and potential to confuse and mislead the jury would still substantially outweigh the probative value of the evidence. For all of these reasons, Plaintiffs' motions to exclude evidence of the FDA's 510(k) clearance of ObTape is **GRANTED**.

**X.  Plaintiffs' Motion in Limine re Plaintiffs' Counsel's Press Releases (ECF No. 71 in 4:12-cv-176, ECF No. 56 in 4:13-cv-42, ECF No. 43 in 4:14-cv-117)**

Plaintiffs anticipate that Mentor will attempt to introduce press releases from a law firm that represented other plaintiffs during a prior phase of this multidistrict litigation. Plaintiffs seek to exclude such evidence as irrelevant and prejudicial.  Mentor does not appear to contend that Taylor, Sanborn, or Mack saw a law firm press release, so the Court finds that evidence of such press releases is irrelevant, and Plaintiffs' motion to exclude the press releases is **GRANTED**.

**XI.  Plaintiffs' Motion in Limine re Previously Ordered Issues (ECF No. 72 in 4:12-cv-176, ECF No. 57 in 4:13-cv-42, ECF No. 44 in 4:14-cv-117)**

Plaintiffs ask the Court to make rulings in this case similar to those it made in the prior trials.

a.  Degradation of ObTape.  As discussed *supra* § III, if Plaintiffs produce a specific causation expert to tie Dr. El-Ghannam's general causation testimony regarding degradation of ObTape to their specific cases, then his testimony will be admitted.

b.  Evidence of Comparative Risks.  As discussed *supra* § VII(k), the Court defers ruling on this issue so that the Court may evaluate the issue in the context of the evidence presented at trial.

c.  Photos of Non-Parties.  As discussed *supra* § VII(g), Plaintiffs will not be permitted to introduce photographs of non-parties.

d.  Argument regarding ObTape pore size.  Plaintiffs intend to argue that ObTape did not conform to Mentor's specifications for pore size.  The Court **DEFERS** ruling on this motion.  If the evidence admitted at trial does not support Plaintiffs' argument on this point, Plaintiffs shall not be permitted to make this argument to the jury.

e.  Adverse Event Reports.  Plaintiffs may only introduce adverse event reports that are substantially similar to their injuries.  As discussed *supra* § IV, the parties shall brief this issue before trial.

f.  Post-Sale Marketing Materials.  Plaintiffs seek leave to admit marketing materials that were distributed after their implant surgeries.  Mentor contends that this evidence is post-sale conduct and is thus irrelevant.  But as discussed *supra* § V, evidence of Mentor's post-sale conduct is relevant and admissible.

g.  Mentor's Manufacturer Status.  The Court granted a previous motion in limine preventing Mentor from arguing that it was not the manufacturer of ObTape

19

under Georgia law.  Plaintiffs seek a similar ruling here, and that motion is **GRANTED**.[3]

## XII. Sanborn and Mack's Motion in Limine regarding Placement of ObTape at Bladder Neck (ECF No. 54 in 4:13-cv-42, ECF No. 41 in 4:14-cv-117)

Sanborn and Mack anticipate that Mentor will attempt to introduce evidence that their implanting physicians implanted ObTape at the bladder neck and not at mid-urethra as instructed by the ObTape product insert data sheet.  Plaintiffs contend that this evidence is irrelevant and prejudicial.  The Court **DEFERS** ruling on this motion.  If Mentor proffers evidence that the physicians' placement at the bladder neck could have caused some of the problems Plaintiffs contend they had with ObTape, then the evidence is relevant and should be admitted.

## XIII.  Sanborn's Motion in Limine re Alcohol Use (ECF No. 58 in 4:13-cv-42)

Sanborn anticipates that Mentor will attempt to introduce evidence that she (1) underreported her college drinking habits to her doctors back in 1981 and (2) has a family history of alcoholism.  The Court finds that such evidence is irrelevant to Sanborn's present claims and thus **GRANTS** this motion in limine.

---

[3] In response to Plaintiffs' motion, Mentor simply noted that the Court's prior ruling pertained specifically to Georgia law.  Mentor did not clearly indicate whether it seeks to argue that it is not the manufacturer of ObTape under Florida, Texas, and Idaho law, but the Court is confident that if Mentor had some authority for arguing that it should not be considered the manufacturer of ObTape under Florida, Texas, and Idaho law, Mentor would have included that authority in its response briefs.

**XIV. Sanborn's Motion in Limine re other Litigation (ECF No. 59 in 4:13-cv-42)**

Sanborn anticipates that Mentor will attempt to introduce evidence that she filed several other claims (Fen-Phen claim, sexual harassment claim, worker's compensation claim and her employment disability claim).  Mentor represents that it does not intend to introduce evidence on Sanborn's Fen-Phen claim, sexual harassment claim, or worker's compensation claim, so Sanborn's motion is **GRANTED** as to this prior litigation.

Mentor contends, however, that Sanborn's employment disability claim is relevant to her lost wages claim.  The Court does not presently have enough information to decide this issue and thus **DEFERS** ruling on this part of Sanborn's motion.  Before Mentor may introduce evidence regarding Sanborn's employment discrimination claim, it must provide more specific information to the Court on why the evidence is relevant.

**XV. Sanborn's Motion in Limine re other Surgeries (ECF No. 60 in 4:13-cv-42)**

Sanborn anticipates that Mentor will attempt to introduce evidence that she had several non-pelvic surgeries (including liposuction and breast augmentation).  The Court finds that such evidence is irrelevant, so this motion in limine is **GRANTED.**

21

**XVI. Joint Motion for Extension of Time regarding Deposition Designations (ECF No. 80 in 4:12-cv-176, ECF No. 77 in 4:13-cv-42, ECF No. 53 in 4:14-cv-117)**

The parties filed a joint motion to extend the deadline for filing their objections to deposition designations. The motion is **GRANTED.** The parties shall file their objections to deposition designations on or before January 6, 2016. The parties are reminded that they should file the complete deposition of each witness whose designated testimony is the subject of objections (or point the Court to where the complete deposition is already in the record).

IT IS SO ORDERED, this 3rd day of December, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA