IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE       *   MDL Docket No. 2004
                                    4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS   *
                                    Case No.
LIABILITY LITIGATION            *   4:12-cv-176 (Taylor)

_____

<u>O R D E R</u>

The jury found in favor of Plaintiff Teresa Taylor and against Mentor Worldwide, LLC on Taylor's product liability claims based on her experience with Mentor's suburethral sling product, ObTape Transobturator Tape. The jury awarded Taylor $400,000.00 in compensatory damages and $4 million in punitive damages (which the Court remitted to $2 million). Presently pending before the Court is Taylor's motion for attorney's fees and costs (ECF No. 196 in 4:12-cv-176), which is granted to the extent set forth in this Order.

DISCUSSION

Under Florida law, "[i]f a plaintiff files a demand for judgment which is not accepted by the defendant within 30 days and the plaintiff recovers a judgment in an amount at least 25 percent greater than the offer, she or he shall be entitled to recover reasonable costs and attorney's fees incurred from the date of the filing of the demand." Fla. Stat. § 768.79(1). "If a plaintiff serves an offer which is not accepted by the

defendant, and if the judgment obtained by the plaintiff is at least 25 percent more than the amount of the offer, the plaintiff shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served." *Id.* § 768.79(6)(b).

On September 17, 2015, Taylor served Mentor with a written "proposal for settlement" under § 768.79, offering to settle her claims for $150,000. Pl.'s Mot. for Att'y's Fees & Costs Ex. B, Pl.'s Proposal for Settlement, ECF No. 196-2. Mentor did not accept the proposal, and the case went to trial. The jury awarded Taylor compensatory damages of $400,000—more than two times the amount of her offer. Thus, Taylor is entitled to recover fees and costs incurred from the date of September 17, 2015. Mentor contends, however, that the Court should deny Taylor's request for fees under Fla. Stat. § 768.79(7)(b), which sets forth factors to be considered in determining the reasonableness of attorney's fees. Those factors include: the "apparent merit or lack of merit in the claim," "[t]he closeness of questions of fact and law at issue," and whether Taylor "unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer." *Id.* § 768.79(7)(b)(1), (3), & (4). Mentor's chief contention is

that Taylor's experts did not adequately explain their opinions prior to trial—opinions that Mentor thoroughly examined on cross-examination at trial and vigorously denied as lacking merit.  It is somewhat disingenuous for Mentor's counsel to suggest that it was not sufficiently familiar with Taylor's claims to have responded to her offer given that counsel is lead counsel for Mentor in the MDL that includes hundreds of similar claims and is likely the leading expert in the world on how to defend these cases.  The Court is not convinced that Taylor unreasonably refused to provide information necessary for Mentor to evaluate the reasonableness of her offer or that Mentor would have evaluated her claims differently if she had provided additional information before trial.  The Court declines to deny Taylor's request for fees on this basis.  The parties do not agree on the amount of fees and costs that Taylor may recover. The Court addresses each issue in turn.

## I.   Attorney's Fees

"Where entitlement to attorneys' fees award is warranted," Florida courts employ "the 'lodestar' method . . . for calculating a reasonable attorney's fee."  *22nd Century Props., LLC v. FPH Props., LLC*, 160 So. 3d 135, 142 (Fla. Dist. Ct. App. 2015) (quoting *Genser v. Reef Condo. Ass'n*, 100 So. 3d 760, 761 (Fla. Dist. Ct. App. 2012)).  To determine the lodestar, the Court must multiply "the number of hours reasonably expended on

the litigation by a reasonable hourly rate for the services of the prevailing party's attorney." *Id.* (quoting *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1264 (M.D. Fla. 2010)). "The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable." *Id.* (quoting *Ottaviano*, 717 F. Supp. 2d at 1264 and citing *Norman v. Housing Auth.*, 836 F.2d 1292, 1303 (11th Cir. 1988)).

### A.   Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Smith v. Sch. Bd.*, 981 So. 2d 6, 9 (Fla. Dist. Ct. App. 2007) (quoting *Norman*, 836 F.2d at 1299). Again, Taylor's counsel "bears the burden . . . of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Norman*, 836 F.2d at 1303. "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Smith*, 981 So. 2d at 9 (quoting *Norman*, 836 F.2d at 1299). "Perhaps the strongest and best evidence of an attorney's market rate is the hourly rate he/she charges clients." *Id.* (quoting *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000)); *accord Jomar Props., L.L.C. v. Bayview Constr. Corp.*,

154 So. 3d 515, 518 (Fla. Dist. Ct. App. 2015). "[T]he best information available to the court is usually a range of fees set by the market place, with the variants best explained by reference to an attorney's demonstrated skill." *Norman*, 836 F.2d at 1301. "It is the job of the district court in a given case to interpolate the reasonable rate based on an analysis of the skills enumerated above which were exhibited by the attorney in the case at bar." *Smith*, 981 So. 2d at 9 (quoting *Norman*, 836 F.2d at 1301).

Taylor employed three attorneys and one paralegal from the Houston, Texas firm of Blizzard & Nabers, LLP, as well as one attorney from the Houston firm of Laminack Pirtle & Martines, LLP. The attorneys are Edward Blizzard, Thomas Pirtle, Katherine Cornell, and Matthew Greenberg; the paralegal is Chuck Hunger. Taylor had a contingent fee arrangement with her legal team, so counsel did not bill her based on an hourly rate, and she did not pay counsel based on an hourly rate. Taylor contends that $800 is a reasonable hourly rate for Mr. Blizzard and Mr. Pirtle; $300 is a reasonable hourly rate for Ms. Cornell and Mr. Greenberg; and $95 is a reasonable hourly rate for Mr. Hunger. Mentor objects to these hourly rates as unreasonable.

Again, "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and

reputation." *Norman*, 836 F.2d at 1299.   And Taylor "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates."   *Id.*   "[T]he 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is" usually the place where the case was filed.   *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).   Taylor filed her action directly in this Court as part of the ObTape multidistrict litigation proceeding.   Had this action not been filed in the MDL, or had both sides not agreed to try the case in Georgia, the proper venue for the case was the U.S. District Court for the Northern District of Florida.   Thus, the Court finds that the relevant markets are the Northern District of Florida and the Middle District of Georgia.   Taylor did not present any evidence on the prevailing market rate in the Northern District of Florida.   This Court is well aware of the prevailing market rate in the Middle District of Georgia.

Taylor did not point to any evidence, such as an affidavit, to support her hourly rate claim for Mr. Pirtle.[1]   Taylor also did not point to any evidence to support her hourly rate claim

---

[1] Taylor submitted evidence that Mr. Pirtle once sought to recover an hourly rate of $800 per hour in a case before the U.S. District Court for the Southern District of Texas.   But Taylor did not point to any evidence of what rate was actually *awarded*.

for Ms. Cornell, Mr. Greenberg, or Mr. Hunger.[2]   The only evidence Taylor submitted to support her hourly rate claim for Mr. Blizzard is: (1) evidence that Mr. Blizzard received $768.62 per hour for common benefit fee time he submitted in the Depuy ASR Hip Implant MDL No. 2197, and (2) evidence that Mr. Blizzard received $750 per hour for common benefit fee time in the Vioxx MDL No. 1657.   The Court is not convinced that common benefit fund awards in settled MDLs should have any bearing on the reasonable hourly rate for preparing and trying a case after MDL pretrial proceedings are complete.   *See, e.g., Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991) (explaining "the great distinctions between the policies and rationale supporting common fund fee awards versus statutory fee awards" and concluding that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class" while the "lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards").   Taylor is

---

[2]  In her reply brief, Taylor pointed to a newspaper article on Texas lawyers who charge business clients more than $1,000 an hour, as well as a National Law Journal article on average billing rates of large firms like Andrews Kurth and Vinson & Elkins.   Taylor raised these arguments for the first time in her reply brief, so they are not properly before the Court.   *United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) (per curiam) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court."). Even if the Court could consider the articles, they do not establish the prevailing hourly rate for counsel representing a plaintiff in a product liability case in the Northern District of Florida or Middle District of Georgia.

seeking to recover fees and costs associated with trial preparation and trial advocacy—fees and costs that were incurred after all of the pretrial proceedings had concluded and the case was ready for trial. Under these circumstances, the Court finds that it should award the prevailing market rate in the relevant legal community—the Northern District of Florida or the Middle District of Georgia.

Taylor, however, contends that she should recover fees at a Houston, Texas rate even though, as discussed above, she did not point to evidence of the prevailing market rate in Houston for an attorney representing a plaintiff in a medical device product liability case. "A prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." *Barnes*, 168 F.3d at 437. "And 'market rate' means the hourly rate charged in the local legal market by someone with expertise in the area who is willing and able to take the case, if such an attorney exists." *Id.* "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* Taylor did not point to any evidence that she sought but could not find representation from an attorney in the Northern District of

Florida.[3]   Thus, Taylor cannot recover fees at Houston, Texas rates but may recover fees at Northern District of Florida or Middle District of Georgia rates.

Neither side pointed the Court to any evidence on the prevailing market rate in the Northern District of Florida or Middle District of Georgia for lawyers of reasonably comparable skills, experience, and reputation as Taylor's legal team.[4] Mentor pointed the Court to cases from the Southern District of Florida, and Taylor's reply brief referenced a case from the Middle District of Florida.  But there is nothing in the record to suggest that attorneys in Marianna, Florida (Northern District) charge the same rates as attorneys in Miami (Southern District) and Jacksonville (Middle District).

Based on the Court's research, the U.S. District Court for the Northern District of Florida approved the following rates in 2015 in a theft of trade secrets case: $400 per hour for two senior attorneys, $200 per hour for an associate, and $100 per hour for a paralegal.  *Mortg. Now, Inc. v. Stone,* No. 3:09CV80/MCR/CJK, 2015 WL 868067, at *3 (N.D. Fla. Feb. 27, 2015) ("Based on the undersigned's knowledge and experience of

---

[3] One of the members of this MDL's Plaintiffs' steering committee, Douglass Kreis, is based in Pensacola, Florida, which is in the Northern District of Florida.
[4] Again, Taylor pointed to two articles in her reply brief.  Even if the Court could consider them, they do not establish the prevailing hourly rate for counsel representing a plaintiff in a product liability case in the Northern District of Florida.

twenty-four years as a state and federal judicial officer in Florida, as well as [an experienced attorney]'s affidavit, the undersigned finds those rates to be reasonable."). Earlier this year, the U.S. District Court for the Northern District of Florida found that an associate attorney's rate of $190 per hour "is well within the prevailing market for attorneys in the North Central Florida area." *Woodhull v. Mascarella*, No. 1:15-CV-280-MW-GRJ, 2016 WL 4546387, at *2 (N.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 1:15CV280-MW/GRJ, 2016 WL 4546378 (N.D. Fla. Aug. 31, 2016), *appeal filed*, No. 16-15874 (11th Cir. 2016). And in a 2015 employment case, the U.S. District Court for the Northern District of Florida approved rates of $350 per hour for a partner, $275 for a senior associate, and $135 per hour for a paralegal. *E.E.O.C. v. W. Customer Mgmt. Grp., LLC*, No. 3:10CV378/MCR/CJK, 2015 WL 3750138, at *5 (N.D. Fla. June 15, 2015). Based on these Northern District of Florida cases, and in the absence of any evidence from the parties on the prevailing market rate in that district, the Court finds that a reasonable hourly rate for Mr. Blizzard and Mr. Pirtle, the two senior attorneys, is $400 per hour. The Court finds that a reasonable hourly rate for Ms. Cornell and Mr. Greenberg, the two junior attorneys with less than five years of experience at the time of trial, is $200 per hour. The Court also finds that the requested rate of $95 per

hour for Mr. Hunger is reasonable.  These rates are consistent with the rates in the Middle District of Georgia.

B.   Hours Reasonably Expended

Having determined the reasonable hourly rates for this matter, the Court turns to the second component of the lodestar: hours reasonably expended.  "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303.  Fee applicants must exercise billing judgment.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  In other words, fee applicants must exclude from their applications "excessive, redundant or otherwise unnecessary" hours: "hours 'that would be unreasonable to bill to a client and therefore to one's adversary.'" *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights . . . ." *Norman*, 836 F.2d at 1301.  Taylor presented an itemized list of attorneys' fees that she asserts were reasonably incurred between September 17, 2015 and February 19, 2016.  Mentor submitted a chart that contains Taylor's time entries plus Mentor's response to each time entry. The Court addresses each objection in turn.

1.   *Block Billing and Vague Entries*

Mentor argues that many of the time entries are vague and "block billed," meaning that single time entries lump together several tasks without breaking down how much time was spent on each task.   In *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203-04 (11th Cir. 2012) (per curiam), the Eleventh Circuit found that the district court did not abuse its discretion in applying a 10% reduction for block billing that included vague entries like "continuing work on case."   In contrast, here, the attorneys' time entries allow Mentor and the Court to understand the basic reason for each time entry.   The Court declines to reduce the attorneys' hours on this basis.

2.   *Duplicative Time*

Mentor contends that Taylor's legal team duplicated efforts on two tasks: (1) their meeting with two former Mentor employees, Catherine Ortuno and Nathalie Gremaud, and (2) the deposition of Mentor employee Delia Cook.   "[A] reduction for redundant hours 'is warranted only if the attorneys are unreasonably doing the same work.'"   *Barnes*, 168 F.3d at 432 (quoting *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)).   "An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the

customary practice of multiple-lawyer litigation." *Id.* (quoting *Johnson*, 706 F.2d at 1208). "Thus, a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Id.*

Three attorneys attended the meeting with Ortuno and Gremaud: Mr. Blizzard, Mr. Pirtle, and Ms. Cornell. Two attorneys prepared for and attended the deposition of Ms. Cook: Mr. Blizzard and Mr. Pirtle. The Court finds that given the importance and complexity of these witnesses' testimony, it was not unreasonable for three attorneys to participate in a meeting with key witnesses or for two attorneys to prepare for and participate in Cook's deposition. The Court declines to reduce the attorneys' hours on this basis.

### 3. *Excessive Time*

Mentor contends that the time Ms. Cornell billed for drafting the pretrial order is excessive. Ms. Cornell billed 24.5 hours for "Draft Pretrial order." Pl.'s Mot. for Att'y's Fees & Costs Ex. G, Summary of Requested Attorney's Fees, ECF No. 196-7 at 2. She made two identical entries for October 30, 2015, and Taylor did not respond to Mentor's argument that the second entry appears to be a duplicate. Based on the Court's

review of the rest of Ms. Cornell's time entries, the Court concludes that the second October 30, 2015 entry is a duplicate and should be stricken.   Mentor also argues that the time Ms. Cornell spent drafting the pretrial order is excessive.   Taylor did not respond to this argument or explain why Ms. Cornell took nearly three full work days to prepare the pretrial order, which required her to complete a form provided by the Court.   The Court finds that this task could have easily been accomplished in 10 hours or less, so the Court strikes the 10.5 excessive hours.

Mentor objects to the time billed on November 17, 2015 for pretrial conference attendance and preparation.   Three attorneys billed eight hours for "Prepare and attend pre-trial conference" on November 17, 2015.   *Id.* at 3.   The conference started at 10:00 a.m. and ended by 11:00 a.m., and Taylor did not explain why or how her attorneys spent the seven hours prior to the conference preparing for it.   The Court reduces the November 17, 2015 time entries to three hours for each attorney.

Mentor also objects to the amount of time Taylor's legal team billed for trial preparation and trial attendance.   Mentor notes that each member of the legal team billed eight hours per trial day plus eight to twelve hours of trial preparation time per day.   With the exception of the final day of trial, which was 6.25 hours, each trial day lasted at least eight hours, so

14

the Court finds no problem with those time entries.[5]   The Court does reduce the "trial" entries for February 18, 2016 to 6.25 hours.   In response to Mentor's contention that the trial prep time claimed by Taylor's team was excessive, Taylor responded that the trial team had many early mornings and many late evenings during the trial.   The Court is not convinced that the hours billed for trial preparation were excessive, and the Court declines to reduce those hours.

### 4.   Time Billed by the Paralegal

Mentor objects to the time billed by Mr. Hunger, the paralegal.   The Eleventh Circuit has "held that paralegal time is recoverable as 'part of a prevailing party's award for attorney's fees and expenses, [but] *only to the extent that the paralegal performs work traditionally done by an attorney*.'" *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (quoting *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982)).   The Supreme Court has noted that "purely clerical or secretarial tasks should not be billed at a paralegal rate" because "[s]uch non-legal work may command a lesser rate" and "[i]ts dollar value is not enhanced just because a lawyer [or paralegal] does it." *Missouri v. Jenkins*, 491 U.S. 274, 288

---

[5] On February 11, 2016, Mr. Blizzard billed eighteen hours for trial; he later clarified that he meant to bill eight hours.

n.10 (1989) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)).

Taylor contends that Mr. Hunger performed "attorney-like" work such as finding exhibits during trial. But Mr. Hunger's time entries do not permit the Court to determine how much time Mr. Hunger spent on "attorney-like" work and how much time he spent on clerical tasks. His entries for "depo prep" and "trial prep" could mean "attorney-like" tasks such as reviewing exhibits and drafting an outline of questions, or they could mean clerical tasks like making copies and creating binders. And, Mr. Hunger's more detailed time entries suggest that he did do clerical work like packing, making copies, and setting up for court. There is no basis in Taylor's submission for the Court to determine how much of Mr. Hunger's time was spent on clerical matters and how much was spent on "attorney-like" work. And, Taylor did not point to any evidence of a reasonable hourly rate for clerical work. For these reasons, the Court excludes Mr. Hunger's time from the lodestar.

C.   The Lodestar

Based on the foregoing considerations, the lodestar amounts to $443,570.00, as reflected in the table below:

| Name | Hours | Hourly Rate | Recoverable Fees |
|------|-------|-------------|------------------|
| Blizzard | 454.25 | $400 | $ 181,700.00 |
| Pirtle | 378.25 | $400 | $ 151,300.00 |
| Cornell | 489.85 | $200 | $ 97,970.00 |
| Greenberg | 63 | $200 | $ 12,600.00 |
| Hunger | 0 | $95 | $0 |
| **Total** | 1,385.35 | – | $ 443,570.00 |

Neither side argued for a departure from the lodestar. The Court concludes that a reasonable attorney's fee for Taylor's legal team is $443,570.00.

## II. Costs

In addition to attorney's fees, Taylor also seeks costs under Fla. Stat. § 768.79. The first issue for the Court to decide is whether recoverable costs are governed by federal law or by Florida's advisory guidelines for taxation of costs. A number of Florida district courts have concluded that only those costs identified in 28 U.S.C. § 1920 are recoverable in federal court cases. *See, e.g., Primo v. State Farm Mut. Auto. Ins. Co.*, No. 3:13-CV-64-J-32MCR, 2015 WL 5474349, at *2 (M.D. Fla. Sept. 15, 2015); *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-00595-T-24-TGW, 2010 WL 3062420, at *2 (M.D. Fla. Aug. 4, 2010); *cf. Timmons v. Combs,* 608 So. 2d 1, 2-3 (Fla. 1992) (noting that "the circumstances under which a party is entitled to costs and attorney's fees [under § 768.79] is substantive" but that the statute contains "procedural aspects"). *But see, e.g., Douglas v. Zachry Indus.*, Inc., No. 6-13-CV-1943-ORL-40GJK, 2015 WL

6750803, at *4-*5 (M.D. Fla. Nov. 5, 2015) (awarding costs under
both § 1920 and Florida's advisory guidelines for taxation of
costs).   The Eleventh Circuit recently concluded that costs
awarded under § 768.79 in federal courts are governed by federal
statute.  *Primo v. State Farm Mut. Auto. Ins. Co.*, No. 15-14612,
2016 WL 5436821, at *4-*5 (11th Cir. Sept. 29, 2016) (per
curiam) (affirming witness fee costs limited to those authorized
under 28 U.S.C. § 1821(b)).   Based on this precedent, the Court
finds that Taylor's costs are limited to costs recoverable under
28 U.S.C. § 1920.

Taylor did not submit a single receipt (or any other
documentation) to substantiate her claimed expenses.   Instead,
she submitted a list of expenses, along with a sworn statement
stating that they were "necessarily incurred" by Taylor.[6]   *See*
Pl.'s Mot. for Att'y's Fees & Costs Ex. E, Blizzard Sworn
Statement ¶¶ 6, 9, ECF No. 196-5; *id*. Ex. H, List of Expenses,
ECF No. 196-8.   The Court will nonetheless review Taylor's list
to determine whether any of her claimed costs are recoverable
under § 1920.   Under § 1920, the following costs are
recoverable:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded
transcripts necessarily obtained for use in the case;

---

[6] Taylor also attached to her reply brief a "Matter Ledger Report,"
along with an affidavit stating that the billed expenses contained in
that report were incurred and paid for Taylor's case.

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Taylor seeks costs for the following categories: Attorney Travel; Copies; Medical Records; Postage; Research; Service of Subpoena; Supplies; Technology Services; Transcripts; Translators; and Witness Fees. The Court will address each category in turn.

A.    Attorney Travel

Taylor seeks $112,991.50 in attorney travel expenses.[7] Such expenses are not recoverable under § 1920. *See, e.g., Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, No. 6:15-CV-294-ORL-31TBS, 2016 WL 2620303, at *6 (M.D. Fla. Apr. 14, 2016), *report and recommendation adopted*, No. 6:15-CV-294-ORL-31TBS, 2016 WL 1755844 (M.D. Fla. May 3, 2016) (collecting cases).[8]

---

[7] One of the expense entries is for lodging for both attorneys and witnesses during trial. But Taylor did not itemize the expenses, so the Court cannot tell which expenses were for attorney travel and which were for witness travel, so even though some witness travel expenses are generally recoverable under federal law under certain circumstances, the Court has no basis for determining an amount of witness travel expenses.

[8] Attorney travel expenses are also are not recoverable under Florida's Uniform Guidelines for Taxation of Costs. *In re Amendments to Unif. Guidelines for Taxation of Costs*, 915 So. 2d 612, 615 (Fla. 2005) (per curiam) (noting that "attorney travel expenses generally are not

### B.   Copies

Taylor seeks $2,643.20 in costs for "copies." While § 1920(3) permits recovery of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," it does not permit recovery of costs for "general copying."[9] *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (per curiam). Taylor did not submit anything to show that the copying costs she seeks to recover are for making copies that were necessarily obtained for use in the case as opposed to general copying. Taylor thus may not recover costs for "copies."

### C.   Copies of Medical Records

Taylor seeks $437.32 in costs for copies of her medical records from Dr. Vukovich, Dr. Voss, and Flowers Hospital. Taylor introduced medical records from these three providers, so the Court finds that the cost of obtaining these copies is recoverable under § 1920(4).

---

taxable . . . in the absence of exceptional circumstances"). Although attorney travel expenses may be awarded if "unique and extraordinary circumstances" exist, such circumstances do not exist here. *See*, *e.g., Bright v. Baltzell*, 65 So. 3d 90, 94 (Fla. Dist. Ct. App. 2011) (approving award of travel expenses in favor of an appellee where the expenses were necessitated by the appellant's behavior and could have been avoided had the appellant not engaged in "last-minute tactics").
[9] Similarly, Florida's Uniform Guidelines for Taxation of Costs permits recovery of "costs of copies of documents filed . . . with the court, which are reasonably necessary to assist the court in reaching a conclusion" and "costs of copies obtained in discovery." *In re Amendments to Unif. Guidelines for Taxation of Costs*, 915 So. 2d at 616.

### D.   Federal Express

Taylor seeks to recover $712.40 for Federal Express expenses.  Postage is not recoverable under § 1920. *Duckworth*, 97 F.3d at 1399.  Taylor thus may not recover her Federal Express expenses.[10]

### E.   Research

Taylor seeks to recover $11,417.29 for Westlaw and scientific article research.  "[C]omputerized legal research" is not recoverable under § 1920.  *Duckworth*, 97 F.3d at 1399.  Taylor thus may not recover research expenses.[11]

### F.   Service Fee

Taylor seeks to recover $222.87 in private process server fees for service of a subpoena on her treating physician, Dr. Vukovich.  Nothing in the text of § 1920 allows for costs of private process servers, so Taylor may not recover the private process server fee.[12]

---

[10] Postage is not listed as a taxable cost in Florida's Uniform Guidelines for Taxation of Costs.  Even if they were, Taylor did not submit anything to explain why these expenses were necessary.

[11] Computerized research is not listed as a taxable cost in Florida's Uniform Guidelines for Taxation of Costs.

[12] Costs of service of witnesses for trial are permitted under Florida's Uniform Guidelines for Taxation of Costs.  *In re Amendments to Unif. Guidelines for Taxation of Costs*, 915 So. 2d at 617.  But here, after Dr. Vukovich made several valid objections in his motion to quash the subpoena, Taylor withdrew the subpoena and relied instead on his deposition testimony.  Even if Florida's taxation of costs rules governed here, the Court is not convinced that this cost should be taxed in light of these circumstances.

### G.   Supplies

Taylor seeks to recover $690.09 for "trial supplies." Taylor did not explain what these supplies were or why they were necessary. And nothing in the text of § 1920 (or Florida's guidelines) allows for costs of supplies. Taylor may not recover these costs.

### H.   Technology Services

Taylor seeks to recover $24,939.85 for "trial tech services." Taylor did not explain what these services were or why they were necessary. And nothing in the text of § 1920 (or Florida's guidelines) allows for such costs. Taylor may not recover these costs.

### I.   Transcript

Taylor seeks to recover $272.25 for a copy of the pretrial conference transcript. Under § 1920(2), she may recover fees for transcripts "necessarily obtained for use in the case." The Court finds that the copy of the pretrial conference was necessarily obtained for use in the case, so Taylor may recover this cost.

### J.   Translator

Taylor seeks to recover $5,120.00 for translation services during trial. Several of Taylor's witnesses are native French speakers, so Taylor employed an interpreter to interpret their

testimony.   Such costs are recoverable under § 1920(6), and

Taylor may recover them.

    K.   Witness Fees

    Taylor seeks to recover $117,269.27 in expert witness fees.

Expert witness fees are not recoverable under 28 U.S.C. § 1920.[13]

*Duckworth*, 97 F.3d at 1399; *accord Primo*, 2016 WL 5436821, at

*4-*5 (affirming award of expert witness fees under

28 U.S.C. § 1821(b)).   Witness fees, however, are recoverable

under § 1920(3), and the amount is governed by

28 U.S.C. § 1821(b).   Under § 1821(b), "[a] witness shall be

paid an attendance fee of $40 per day for each day's

attendance."[14]   Four of Taylor's witnesses testified on one day

of trial: Dr. Hyman, Dr. El-Ghannam, Dr. Siegel, and Dr. Cosson.

One of Taylor's witnesses, Dr. Porter, testified on two days.

Therefore, Taylor may recover $240 in witness fees.

---

[13] In contrast, a "reasonable fee for deposition and/or trial testimony, and the costs of preparation of any court ordered report" are recoverable under Florida's Uniform Guidelines for Taxation of Costs. *In re Amendments to Unif. Guidelines for Taxation of Costs*, 915 So. 2d at 616. And reasonable travel expenses may be recovered. Taylor, however, did not submit anything to show which portion of each expert's fee was for trial testimony, which portion was for travel, and which portion was for something else. So, even if Florida's guidelines governed here, there is no basis for the Court to determine which expert witness fees are recoverable and which are not.

[14] Travel costs may also be recovered, 28 U.S.C. § 1821(c), (d), though Taylor did not submit anything to show what, if any, portion of the expert fees were for travel expenses, so the Court cannot award witness travel costs here.

L.   Summary of Costs

In summary, Taylor may recover $6,069.57 in costs: $437.32 for copies of medical records, $272.25 for transcripts, $5,120.00 for interpreter compensation, and $240.00 for witness fees.

CONCLUSION

As discussed above, Taylor's motion for attorney's fees and costs (ECF No. 196) is granted to the extent described in this order. The Court awards Taylor attorney's fees in the amount of $ 443,570.00 and costs in the amount of $6,069.57.

Based on today's order and the order entered on October 20, 2016 remitting the punitive damages award to $2,000,000, the Clerk is directed to enter an Amended Final Judgment in favor of the Plaintiff and against the Defendant in the total amount of $2,849,639.57.


IT IS SO ORDERED, this 25th day of October, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA